# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hess v. Loyd*, 2012 IL App (5th) 090059

---

| | |
|---|---|
| Appellate Court Caption | LAWRENCE J. HESS, Plaintiff-Appellant, v. RONALD O. LOYD and CATHY J. LOYD, Defendants-Appellees (Bruce A. Carr, Party-Appellant). |
| District & No. | Fifth District<br>Docket No. 5-09-0059 |
| Filed | January 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action asserting a lien for the attorney fees allegedly due plaintiff for the representation he provided to defendants in a medical malpractice action during the time plaintiff was employed by a law firm that terminated him before the case was resolved, the trial court properly granted judgment on the pleadings in favor of defendants where the contract plaintiff had with the law firm where he was employed provided no basis on which he could proceed against defendants, and based on the findings that plaintiff's complaint was not warranted by existing law and was interposed for an improper purpose, sanctions were properly imposed pursuant to Supreme Court Rule 137 and sanctions on appeal were granted pursuant to Rule 375. |
| Decision Under Review | Appeal from the Circuit Court of Montgomery County, No. 08-L-11; the Hon. Kelly D. Long, Judge, presiding. |
| Judgment | Affirmed; motion to supplement the record on appeal denied; motion for sanctions on appeal granted; cause remanded. |

| Counsel on Appeal | Bruce A. Carr, of Rex Carr Law Firm, LLC, of East St. Louis, for appellants.

Todd A. Bresney, of Kanoski & Associates, of Bloomington, for appellees. |

| Panel | JUSTICE SPOMER delivered the judgment of the court, with opinion.
Justice Stewart concurred in the judgment and opinion.
Justice Goldenhersh concurred in part and dissented in part, with opinion. |

## OPINION

¶ 1    The plaintiff, Lawrence J. Hess, appeals from the December 5, 2008, order of the circuit court of Montgomery County which granted a judgment on the pleadings to the defendants, Ronald O. Loyd and Cathy J. Loyd, pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615(e) (West 2008)). Mr. Hess and his attorney, Bruce A. Carr, also appeal from the January 30, 2009, order of the circuit court of Montgomery County, as amended by an order dated March 2, 2010, which was entered while this appeal was held in abeyance pursuant to an order entered by this court. Pursuant to the circuit court's orders, Mr. Hess and Mr. Carr are required to pay the Loyds a total of $9,873.83 for attorney fees and costs as sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). For the following reasons, we affirm all three orders entered by the circuit court. Also before this court is the Loyds' motion for sanctions on appeal pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), which was taken with the case. For the following reasons, we allow the motion and remand this case to the circuit court for a determination of the amount of sanctions on appeal. Finally, before this court is the defendants' emergency motion to supplement the record with this court's previous decision in *Loyd v. Billiter*, No. 5-09-0065 (Oct. 15, 2010) (unpublished order pursuant to Illinois Supreme Court Rule 23 (eff. May 30, 2008)). We hereby deny the motion as moot, as this court is fully cognizant of its prior decisions and has fully considered the relevance of that decision herein.

¶ 2                                    FACTS

¶ 3    Mr. Hess is an attorney who is a former associate of Kanoski & Associates, an incorporated law firm. Mr. Hess, through his attorney, Mr. Carr, filed a complaint in the circuit court of Montgomery County on July 17, 2008, against the Loyds, who were clients of Kanoski & Associates during the time that Mr. Hess was employed there. Attached to the complaint is a copy of a contingency fee contract, dated February 11, 2002, between Kanoski & Associates and the Loyds, whereby the Loyds agreed that Kanoski & Associates would

pursue their medical malpractice claim on their behalf. Also attached to the complaint is an employment contract between Mr. Hess and Kanoski & Associates, dated May 9, 2001, which clearly states the following:

> "Employee acknowledges that while licensed employees must perform all legal services, the clients contracting for said services are clients of the Corporation and not of any individual employee."

¶ 4        The employment contract further provides that Mr. Hess would receive, as compensation for his services, a salary plus a bonus in the form of a percentage of the fees he generated on behalf of Kanoski & Associates.

¶ 5        The complaint alleges that Kanoski & Associates assigned the Loyds' medical malpractice file to Mr. Hess for handling. The complaint contains a multitude of paragraphs regarding other clients' files that Mr. Hess worked on and other allegations that appear to be directed at the conduct of Kanoski & Associates which have no relevance to the Loyds, who are the sole defendants. The complaint alleges that on February 14, 2007, Kanoski & Associates terminated Mr. Hess's employment in bad faith and destroyed his personal files and work product, that Mr. Hess added over $1 million in value to Kanoski & Associates' cases, that Kanoski & Associates fired him to deprive him of his bonuses, and that Kanoski & Associates owed Mr. Hess $316,616.21 in unpaid salary and bonuses.

¶ 6        According to the complaint, and as substantiated by exhibits, in May 2008, Mr. Hess, through his attorney, Mr. Carr, of the Rex Carr Law Firm, where Mr. Hess was then employed, sent letters to many of the clients of Kanoski & Associates, including the Loyds, "notifying" them that he remained their attorney and was responsible for their files. The Loyds sent a return letter to Mr. Carr, which is also attached to the complaint and stated the following:

> "I received your letter regarding Mr. Hess. I am writing to inform you that Mr. Hess IS NOT responsible for my lawsuit. I have a very competent attorney. Do not contact me again regarding this matter."

¶ 7        According to the complaint, and as substantiated by exhibits and by the records of this court in *Loyd v. Billiter*, No. 5-09-0065 (Oct. 15, 2010) (unpublished order pursuant to Illinois Supreme Court Rule 23 (eff. May 30, 2008)), Mr. Hess, through Mr. Carr, filed a notice of attorney lien pursuant to section 1 of the Attorneys Lien Act (770 ILCS 5/1 (West 2008)), dated May 15, 2008, in the Loyds' medical malpractice lawsuit. The Loyds filed a petition to strike or adjudicate the lien on the basis that they had no contract with Mr. Hess, but instead contracted with Kanoski & Associates, which was later amended to include Kennith W. Blan, Jr., an affiliated attorney. The petition to strike or adjudicate the lien was supported by the relevant contracts.

¶ 8        Based on the factual allegations outlined above, Mr. Hess, through Mr. Carr, alleged causes of action against the Loyds in five counts: (1) breaches of contract, (2) unjust enrichment and *quantum meruit*, (3) breaches of promises, (4) statutory, contractual, and equitable liens, and (5) tortious interference with contracts, business expectations, and economic advantages. On August 20, 2008, the Loyds filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2008)) and

for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). On August 28, 2008, Mr. Hess, through Mr. Carr, filed a motion for leave to file an amended complaint to join Kanoski & Associates, Ronald Kanoski, and Kennith W. Blan, Jr., as defendants. However, the proposed amended complaint did not add to or change the allegations against the Loyds.

¶ 9      On October 2, 2008, Mr. Carr sent a letter to Mr. Blan offering to dismiss the complaint against the Loyds in exchange for $165,312, which represented half of the funds that were then in escrow in *Loyd v. Billiter*, pending adjudication of Mr. Hess's attorney lien. On December 4, 2008, the circuit court conducted a hearing on all pending motions in the instant case, and on December 5, 2008, it entered an order granting judgment on the pleadings in favor of the Loyds. The circuit court's order found that Mr. Hess and the Loyds had no contract for representation, that the Loyds had hired Kanoski & Associates, not Mr. Hess, to represent them, and that the complaint was legally deficient. The circuit court further found that Mr. Hess, through Mr. Carr, had instituted the lawsuit against the Loyds to harass them and gain an advantage against other parties. The circuit court found that the Loyds were entitled to a sanction award pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) and ordered the circuit clerk to schedule a hearing to determine the appropriate amount. Finally, the circuit court denied Mr. Hess's motion for leave to amend the complaint, finding that there were no different allegations against the Loyds and that the proposed amended complaint did not separately state causes of action against the defendants he proposed to add.

¶ 10     On January 29, 2009, the circuit court held a hearing for the purpose of determining an appropriate sanctions award. Counsel for the Loyds, who is an associate of Kanoski & Associates, submitted an affidavit of attorney fees and costs itemizing the time spent in defending the lawsuit, for a total of 37.1 hours. Counsel attested that his practice involves hourly and contingent rates and that his usual and customary hourly rate is $250 per hour, resulting in attorney fees of $9,275. Counsel also attested to $114.82 in costs associated with defending the lawsuit. The Loyds submitted an affidavit attesting to $489.01 in costs for missed work and mileage to the hearings. Mr. Hess and Mr. Carr did not file a counteraffidavit or put on any evidence at the hearing.

¶ 11     On January 30, 2009, the circuit court entered an order requiring Mr. Hess to pay the Loyds the entire amount of fees and costs that were submitted at the hearing, but stated that the attorney fees and costs were contingent "upon presentation of a written receipt/cancelled check that said sums have been paid by defendants." On February 17, 2009, Mr. Hess and Mr. Carr filed a notice of appeal. On April 17, 2009, this court, on its own motion, entered an order holding this appeal in abeyance pending final disposition of the issue of attorney fees due to the contingent nature of the circuit court's order. On September 17, 2009, Mr. Hess, through Mr. Carr, filed a motion to vacate or set aside the sanctions and to dismiss with prejudice the Loyds' claim for attorney fees and expenses on the basis that the Loyds had not presented a receipt showing that they had paid the attorney fees and costs.

¶ 12     On November 30, 2009, the Loyds filed a motion to partially reconsider the sanctions award, arguing that Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) does not require payment of the attorney fees and expenses in order for them to be awarded. The Loyds also requested that the sanctions order be modified to specify that both Mr. Hess and Mr. Carr

were liable to pay the sanctions. According to the motion to partially reconsider, the Loyds were represented on a contingency fee basis and were to pay attorney fees to Kanoski & Associates only if they were awarded sanctions. In a supplemental filing, the Loyds produced the contingency fee contract reflecting this agreement. After hearing oral argument, the circuit court entered an order on March 2, 2010, granting the motion to partially reconsider, deleting the requirement that the Loyds produce proof of payment prior to the sanctions award, and specifying that Mr. Hess and Mr. Carr were both liable for the sanctions. This appeal was subsequently reinstated.

¶ 13    On October 15, 2010, this court issued its decision in *Loyd v. Billiter*, No. 5-09-0065 (Oct. 15, 2010) (unpublished order under Supreme Court Rule 23). In that decision, this court affirmed the order of the circuit court of Montgomery County which granted the Loyds' petition to strike Mr. Hess's attorney lien claim. *Id*. at 1. This court found as follows:

> "The record also supports the trial court's finding that Hess's employment contract with Kanoski & Associates would bar any claim he has for further compensation for his work on the Loyd litigation. Under the plain language of the contract, Hess has no proprietary right or interest in the representation of plaintiffs." *Id*. at 4.

¶ 14    In a separate order in the *Loyd v. Billiter* appeal, No. 5-09-0065, this court imposed sanctions on Mr. Hess and Mr. Carr pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), noting that "the 4th District Appellate Court previously imposed sanctions against [Mr. Hess and Mr. Carr] for appealing the dismissal of an invalid attorney's lien under the same circumstances as the attorney's lien on appeal in the case at bar" (Goldenhersh, P.J., dissenting). Despite the ruling of this court and the prior sanctions awards, Mr. Hess and Mr. Carr chose to continue to prosecute the instant appeal against the Loyds. On February 7, 2011, the Loyds filed a motion for sanctions on appeal, pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), which is taken with the case.

¶ 15                                    ANALYSIS

¶ 16                        1. Judgment on the Pleadings

¶ 17    Mr. Hess argues that the circuit court erred in granting the Loyds a judgment in their favor on the pleadings, pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2008)). The standard of review for a judgment on the pleadings is *de novo*. *Pekin Insurance Co. v. Allstate Insurance Co.*, 329 Ill. App. 3d 46, 49 (2002). "A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by his complaint." *Id*. at 49. In so doing, the trial court must examine all pleadings on file, taking as true any well-pleaded facts and reasonable inferences to be drawn therefrom, to determine whether the controversy may be decided as a matter of law. *TDC Development Corp. v. First Federal Savings & Loan Ass'n of Ottawa*, 204 Ill. App. 3d 170, 174 (1990) (citing *Walker v. State Board of Elections*, 65 Ill. 2d 543, 552-53 (1976)). "On appeal, the reviewing court must ascertain whether the trial court correctly determined that the pleadings presented no issue of material fact and, if there were no such issue, whether the court correctly entered the judgment." *Pekin*, 329 Ill. App. 3d at 49.

¶ 18    A plaintiff is required to attach to his complaint any written instruments upon which his

claim is based, and these are to be treated as part of the complaint itself. *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 288 (2007) (citing 735 ILCS 5/2-606 (West 2006), and *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004)). "Where allegations made in the body of the complaint conflict with facts disclosed in the exhibits, the exhibits will control and the allegations will not be taken as true in evaluating the sufficiency of the complaint." *Gore*, 376 Ill. App. 3d at 288 (citing *Bajwa*, 208 Ill. 2d at 431-32).

¶ 19    Here, the exhibits attached to the plaintiff's complaint disclose that Mr. Hess, and his attorney, Mr. Carr, have absolutely no basis on which to proceed against the Loyds for the same reasons set forth in our previous order in *Loyd v. Billiter*, No. 5-09-0065 (Oct. 15, 2010) (unpublished order under Supreme Court Rule 23). At the time that Mr. Hess worked on the Loyds' medical malpractice case, Mr. Hess was an employee of Kanoski & Associates. His employment contract with Kanoski & Associates clearly provides that the clients that Mr. Hess worked for on behalf of Kanoski & Associates were the clients of the firm and not of the individual associate. The employment contract clearly states that Mr. Hess would be paid a salary and a bonus for the work he performed for the clients of the firm. The Loyds entered into a written contingency fee agreement with Kanoski & Associates, and not with Mr. Hess.

¶ 20    Contrary to the position of Mr. Hess and Mr. Carr before the circuit court and again on appeal, a firm may enter into an attorney-client relationship with a client pursuant to the terms of Illinois Supreme Court Rule 721 (eff. Sept. 30, 2009). In contrast, Mr. Hess is prohibited by the Illinois Rules of Professional Conduct from entering into an oral or implied contingency fee contract with a client, as said contracts are required to be in writing. Ill. Rs. Prof'l Conduct R. 1.5(c) (eff. Jan. 1, 2010). For all of these reasons, we find that Mr. Hess was not entitled to any attorney fees from the Loyds and therefore cannot recover for breaches of contract, implied or written, a breach of promise, *quantum meruit*, or unjust enrichment. Additionally, as we found in *Loyd v. Billiter*, No. 5-09-0065 (Oct. 15, 2010) (unpublished order under Supreme Court Rule 23), the Loyds rightfully filed a petition to strike Mr. Hess's attorney lien and are not liable for any statutory, equitable, or contractual liens or interference with any contract, business expectation, or economic advantage. The circuit court did not err in entering a judgment on the pleadings in favor of the Loyds on all counts of the complaint and did not err in denying Mr. Hess, through his attorney Mr. Carr, leave to amend the complaint, as the proposed amendment merely added defendants and in no way cured the defects in the pleadings against the Loyds.

¶ 21                              2. Sanctions in the Circuit Court

¶ 22    Mr. Hess and Mr. Carr next argue that the circuit court erred in awarding sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). "A circuit court's decision whether to impose Rule 137 sanctions is entitled to considerable deference upon review and will not be reversed absent an abuse of discretion." *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996). "A circuit court exceeds its discretion only where no reasonable person would take the view adopted by it." *Id.* Rule 137 provides, in pertinent part, as follows:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994).

¶ 23    For the reasons set forth above, we find that the circuit court's findings, that the complaint in its entirety was not warranted by existing law and was interposed for an improper purpose, were not an abuse of discretion. We find the conduct of Mr. Hess, through his attorney, Mr. Carr, in suing a client of his former law firm for unpaid legal fees and tortious conduct for contesting his attorney lien when his employment contract clearly stated the firm's clients were not his clients and he was to be paid for his services by salary, amounts to egregious, bad-faith, and harassing pleading, and it was well within the circuit court's discretion to impose sanctions.

¶ 24    Mr. Hess, through Mr. Carr, argues that the circuit court erred in awarding attorney fees as a sanction because the Loyds are not obligated to pay attorney fees to their attorney and thus cannot be said to have "incurred" such fees. We find this argument to be without merit. The Loyds presented the circuit court with the affidavit of their counsel showing the amount of time counsel spent defending this lawsuit and his usual and customary hourly rate. The Loyds also presented the contract whereby their counsel, who represented them in the medical malpractice action, agreed to defend the lawsuit instituted against them by its former employee on a contingency basis, where the Loyds would be liable for attorney fees and costs only in the event that sanctions were awarded. We find that this arrangement was appropriate under the circumstances of this case and that reversing the attorney fee sanctions award under these circumstances would discourage law firms from defending their clients in egregious situations such as this. Moreover, this court has previously affirmed an attorney fee sanction award in a case where the party receiving sanctions was represented on a contingency basis. See *Cretton v. Protestant Memorial Medical Center, Inc.*, 371 Ill. App. 3d 841, 868-69 (2007). We find that the Loyds "incurred" fees for purposes of Rule 137.

¶ 25    Mr. Hess, through Mr. Carr, further argues that the circuit court erred in imposing the sanctions award against Mr. Hess, who did not sign the sanctionable pleadings. This argument is also wholly without merit, as Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) clearly states that sanctions can be imposed against the attorney who signed the pleading, the represented party, or both. In a case such as this, where the represented party is also an attorney, we find it perfectly reasonable to impose the sanction against both Mr. Hess and Mr. Carr. The circuit court did not abuse its discretion in doing so.

¶ 26    Finally, Mr. Hess, through Mr. Carr, argues that the circuit court erred in failing to hold an evidentiary hearing on the issue of sanctions. We disagree. A hearing is necessary for a

trial court to determine if any untrue statement within a pleading was made without reasonable cause, unless the court's determination can be made on the basis of the pleadings or trial evidence. *Century Road Builders, Inc. v. City of Palos Heights*, 283 Ill. App. 3d 527, 531 (1996). Although an evidentiary hearing should always be held when a sanction award is based upon a pleading filed for an improper purpose, a hearing is unnecessary if the sanction award is due to the unreasonable nature of the pleading based on an objective standard. *Id*. Furthermore, although an evidentiary hearing on the reasonableness of any fees to be awarded is usually required because the issue of reasonableness is a matter of proof which should be subject to cross-examination, the circuit court's acceptance of unrebutted affidavits of counsel as to fees, in the absence of an evidentiary hearing, is within its discretion. *Id*.; *cf. Heritage Pullman Bank & Trust Co. v. Carr*, 283 Ill. App. 3d 472, 481 (1996).

¶ 27    Here, although the circuit court found that the complaint was filed for an improper purpose, it is also clear from the face of the pleadings that the complaint had no basis in law and, as such, was unreasonable under an objective standard. An evidentiary hearing was not necessary to make this determination. In addition, Mr. Carr had the opportunity to put on evidence as to the reasonableness of the amount of fees at the hearing held on January 29, 2009, and chose not to do so. The circuit court did not err in accepting the unrebutted affidavit of fees from the Loyds. For all of these reasons, we affirm the circuit court's sanction award in its entirety.

¶ 28                            3. Sanctions on Appeal

¶ 29    We now address the Loyds' motion for sanctions on appeal pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), which was filed on February 7, 2011, and taken with the case. We grant the motion for sanctions, for all of the reasons noted above. We remand this case for the circuit court to determine the amount of sanctions on appeal.

¶ 30                                CONCLUSION

¶ 31    For the foregoing reasons, we affirm the December 5, 2008, order of the circuit court of Montgomery County which granted judgment on the pleadings in favor of the Loyds. We affirm the January 30, 2009, order of the circuit court of Montgomery County, as amended by an order dated March 2, 2010, which awarded sanctions to the Loyds, ordering Mr. Hess and Mr. Carr to pay the Loyds a total of $9,873.83 for attorney fees and costs. Finally, we grant the Loyds' motion for sanctions on appeal and remand for the circuit court to determine the amount of sanctions on appeal.

¶ 32    Affirmed; motion to supplement the record on appeal denied; motion for sanctions on appeal granted; cause remanded.

¶ 33    JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

¶ 34    I concur with my colleagues concerning the substantive issues in this appeal. As to their

disposition on sanctions, I respectfully dissent.

¶ 35    I note initially that in my opinion the record does not sustain the circuit court's findings that the complaint was not warranted by existing law, but rather was interposed for an improper purpose. We all recognize the broad discretion the circuit court possesses in determining such questions and the judge's hard and lonely position, and my conclusion is in no way a criticism of a long-serving distinguished and exemplary jurist. My chief concern is a weightier issue.

¶ 36    Disagreeing with an advocate's argument does not equate with the conclusion that the advocate's position was not "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" (Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)). The history of the common law is replete with initially unpopular and rejected positions. The common law's most important jurisprudential philosophers recognized the inherent evolutionary nature of the common law; among others, consider Blackstone, Story, Holmes, and Brandeis. The alternative is the dead hand of archaic precedents and rules so rightly ridiculed by Dickens. It is appropriate that we disagree; it is error to send a message that inhibits growth of our common law tradition.

¶ 37    For the reasons stated above, I respectfully dissent from my colleagues on the issue of sanctions.