THIRD DIVISION
August 25, 2010

No. 1-09-1708

PEKIN INSURANCE COMPANY,            )       Appeal from the
                                           )       Circuit Court of
     Plaintiff-Appellant,         )       Cook County.
                                           )
     v.                             )
                                         )
PULTE HOME CORPORATION, an Illinois   )       Honorable
Corporation, JIM KUNDE CONSTRUCTION,  )       LeRoy K. Martin, Jr.,
INC., an Illinois Corporation, and KENNETH J.  )       Judge Presiding.
KAISER,                               )
                                       )
     Defendants-Appellees.        )

JUSTICE QUINN delivered the opinion of the court:

Defendant Kenneth Kaiser filed a lawsuit against defendants Pulte Home Corporation (Pulte), a homebuilding company, and Jim Kunde Construction, Inc. (Kunde Construction), Pulte's sewer subcontractor alleging that he suffered severe and permanent injuries when he fell into an unguarded sewer manhole in the backyard of a home under construction. Pulte tendered its defense of Kaiser's complaint to plaintiff Pekin Insurance Company (Pekin), which had issued an insurance policy to Kunde Construction, naming Pulte as an additional insured. Pekin denied the tender and filed this declaratory judgment action. Pekin and Pulte filed cross-motions for summary judgment, and after a hearing, the trial court denied Pekin's motion and granted Pulte's motion, finding that Pekin owned Pulte a defense in the underlying litigation. For the reasons set forth below, we affirm the trial court.

## I. BACKGROUND

The facts giving rise to this litigation are not in dispute. Kenneth Kaiser, an employee of Commonwealth Edison/Exelon, filed a two-count complaint in the circuit court of Cook County on August 15, 2007, and a nearly identical first amended complaint on January 17, 2008, alleging that he sustained severe and permanent injuries when he fell into an unguarded sewer manhole while walking in the backyard of a home under construction in Carpentersville, Illinois. Kaiser named several parties that were involved with the construction project as defendants, including Pulte, the developer, and Kunde Construction, the sewer and water subcontractor. Count I of the complaint raised a negligence claim and count II asserted a premises liability claim. In the negligence count, Kaiser alleged that defendants "owned, controlled and/or were in charge of the erection, construction, repairs, alteration, removal and/or painting" of the home and "individually and through their agents, servants and employees, [were] present during the course of such erection, construction, repairs, alteration, removal and/or painting," "participated in coordinating the work being done and designated various work method, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work," and "had authority to stop the work, refuse the work and materials and order changes in the work." Further, Kaiser alleged that defendants, "by and through their agents, servants and employees, were *** guilty of one or more of the following careless and negligent acts and/or omissions:"

"(a) Failed to make a reasonable inspection of the premises and the work being done thereon, when the Defendants knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff.

(b) Improperly operated, managed, maintained and controlled the aforesaid premises, so that as a direct and proximate result thereof, the Plaintiff was injured.

(c) Failed to provide the Plaintiff with a safe place within which to work.

(d) Failed to warn the Plaintiff of the dangerous conditions then and there existing, when the Defendants knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff.

(e) Failed to barricade or cover a drain/sewer opening in the ground.

(f) Allowed men to work around an uncovered and unbarricaded drain/sewer opening in the ground.

(g) Permitted a drain/sewer opening in the ground to be uncovered or unbarricaded."

Kaiser further alleged "[t]hat as a direct and proximate result of one or more of the aforesaid careless and negligent acts and/or omissions of the Defendants," he fell and suffered severe and permanent injuries.

Pulte filed an answer denying the allegations and raising affirmative defenses. Pulte also filed a counterclaim against Kunde Construction for contribution. On March 13, 2009, in response to Pulte's request to admit, Kaiser admitted that his theories at trial included but were not limited to all theories of vicarious liability permitted under section 414 of the Restatement (Second) of Torts. Restatement (Second) of Torts § 414 (1965).

Pulte tendered its defense in the Kaiser lawsuit to Pekin, which had issued an insurance policy to Kunde Construction as the named insured, effective from August 9, 2006, to March 3,

2007. Pulte was named as an additional insured on that policy pursuant to an endorsement that reads, in relevant part, as follows:

> **Who is an Insured (Section II)** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation. *** It is further understood that the designation of an entity as an additional insured does not increase or alter the scope of coverage of this policy."

Pekin denied the tender on the grounds that the additional insured endorsement does not provide coverage for Pulte's own acts or omissions or those in which Pulte played a role. On January 18, 2008, Pekin filed this declaratory judgment action in the circuit court of Cook County, seeking a determination that it is not liable under the policy to defend Pulte in the Kaiser litigation. In its complaint, Pekin asserted that it had no duty to defend Pulte for one or more of the following reasons: (a) the additional insured endorsement provides no coverage to Pulte for its own negligence; (b) Kaiser sued Pulte based on the alleged negligence of Pulte toward Kaiser; and (c) Kaiser was injured on a construction site where work was in progress, therefore, the extension of coverage to Pulte under the endorsement for completed operations has no application. Pekin and Pulte filed cross-motions for summary judgment. Following a hearing on

June 17, 2009, the trial court denied Pekin's motion and granted Pulte's motion, finding that Pekin had a duty to defend Pulte in the Kaiser litigation. This appeal followed.

## II. ANALYSIS

On appeal, Pekin argues that the trial court erred in finding that it has a duty to defend Pulte because the underlying complaint in the Kaiser litigation does not allege that Pulte is "solely liable as a result of some act or omission of the named insured." Pekin contends that Pulte faces only direct liability for its own allegedly negligent acts and not vicarious liability for the allegedly negligent acts of Kunde Construction. Therefore, Pekin argues, by the terms of the additional insured endorsement and the prevailing construction of such endorsements, Pulte is not an additional insured for the liability that Kaiser alleges against it, and therefore, Pekin had no duty to defend it. Pulte contends, however, that because the underlying complaint asserts that defendants "owned, controlled and/or were in charge of" the work site, and Kaiser's injuries arose out of Kunde Construction's failure to cover or barricade the sewer opening, it is possible that Pulte might be found to be vicariously liable for Kunde Construction's acts or omissions and therefore, Pekin has a duty to defend Pulte in the underlying litigation. We find that under the specific facts of this case, the trial court did not err in finding that Pekin had a duty to defend Pulte in the underlying litigation.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court[,] which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and

admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). We review cases involving summary judgment de novo. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998). As in this case, "where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339 (2005).

In determining an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaint. "If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." (Emphasis omitted.) United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73 (1991). "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill. 2d 96, 98 (2000). "[A]ny doubt with regard to such duty is to be resolved in favor of the insured." United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d 955, 963 (2005). "[I]f the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." Wilkin, 144 Ill. 2d at 73. " 'In addition, provisions that limit or exclude coverage will be interpreted liberally

in favor of the insured and against the insurer. [Citation.]  A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]' "  Pekin Insurance Co. v. Wilson, 237 Ill. 2d 446, 456 (2010), quoting American States Insurance Co. v. Koloms, 177 Ill. 2d 473, 479 (1997).

A trial court is not limited, however, to the allegations in the complaint in determining whether an insurer has a duty to defend.  This is illustrated by the recent holding in American Economy Insurance Co. v. Holabird & Root, 382 Ill. App. 3d 1017 (2008).  In that case, Caroline Cogtella, who worked in a newly renovated building on the campus of DePaul University (DePaul), sued several parties including Holabird & Root (H&R), the architect and general contractor, and DePaul, the property owner, alleging that she suffered bodily injury due to her exposure to fluorescent lighting installed in the building.  Holabird & Root, 382 Ill. App. 3d at 1018.  H&R tendered its defense to American Economy Insurance Company (American Economy), because American Economy was the insurer of Metrick Electric Company (Metrick), the electrical subcontractor that H&R hired to install the lighting in the building and because H&R was named as an additional insured on Metrick's policy.  Holabird & Root, 382 Ill. App. 3d at 1018.  "American Economy denied coverage and filed [a] declaratory judgment action as to its duty to defend in the Cogtella litigation."  The trial court held that American Economy had an obligation to defend H&R in the underlying litigation.  Holabird & Root, 382 Ill. App. 3d at 1018.

On appeal, American Economy  "argu[ed] that the trial court erred in finding that American Economy had a duty to defend H&R because the complaint filed by Cogtella did not allege any negligence by Metrick and because the trial court improperly considered a third-party

complaint filed by DePaul to find such a duty." Holabird & Root, 382 Ill. App. 3d at 1018-19. This court affirmed, however, holding that although the first step in determining whether an insurer has a duty to defend is to compare the allegations of the complaint in the underlying case to the provisions of the insurance policy, a court may look "beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action." Holabird & Root, 382 Ill. App. 3d at 1031. "After all, the trial court 'need not wear judicial blinders' and may look beyond the complaint at other evidence appropriate to a motion for summary judgment." Holabird & Root, 382 Ill. App. 3d at 1032 quoting West Bend Mutual Insurance Co. v. Sundance Homes, Inc., 238 Ill. App. 3d 335, 338 (1992).

Similarly, in an earlier case, Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 304-05 (1983), this court held that the trial court could look beyond the underlying complaint in determining the duty to defend. The court stated that "[t]o require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." Envirodyne Engineers, Inc., 122 Ill. App. 3d at 304-05. In Pekin Insurance Co. v. Wilson, 237 Ill. 2d 446 at 462, our supreme court recently affirmed those holdings, stating that "Holabird & Root and Envirodyne Engineers, Inc. set forth the proper consideration for a circuit court to use in deciding whether it is appropriate to examine evidence beyond that contained in the underlying complaint in determining the duty to defend. ADC, LLC"

1-09-1708

Following oral argument, Pekin was granted leave to cite Pekin Insurance Co. v. Roszak No. 1-09-1709 (June 25, 2010) as additional authority. In Roszak, the sixth division of this court limited its analysis on the issue of the duty to defend by looking solely at the underlying complaint, stating, "we are still tied to the words of the complaint." Roszak, slip op. at 12. However, as noted above, that analysis runs counter to our supreme court's decision in Wilson, 237 Ill. 2d 446 (2010), which held that "a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." Wilson, 237 Ill. 2d at 459. Therefore, in determining whether Pekin has a duty to defend Pulte in the underlying litigation, we will compare the complaint to the terms of the insurance policy issued to Kunde Construction, but we will also look to other relevant pleadings and documents, including the contract between Pulte and Kunde Construction.

The complaint in the underlying Kaiser litigation alleges that "Defendants, by and through their agents, servants and employees," were guilty of one or more careless and negligent acts or omissions that were the direct and proximate cause of his severe and permanent injuries. Pekin contends that the liability alleged against Pulte in Kaiser's complaint is independent of any liability alleged against Kunde Construction, the named insured, and that Kaiser does not allege that Pulte is liable *solely* because of some act or omission of Kunde Construction. Pekin asserts that absent such an allegation, Pulte is not an additional insured under the policy issued to Kunde Construction, which states that Pulte is "an additional insured only with respect to liability incurred *solely as a result of some act or omission of the insured* *** and *not* for its own independent negligence or statutory violation." (Emphasis in original.) Pekin acknowledges that

-9-

the complaint makes the same allegations against Pulte and Kunde Construction, but asserts that because it does not allege Kunde Construction's acts are any basis, let alone the *sole* basis for Pulte's liability, the additional insured coverage does not extend to Pulte in this case.

We agree with Pekin that pursuant to the allegations in the underlying complaint, Pulte might be found independently liable to Kaiser, but those allegations do not preclude the possibility that Pulte could be found liable solely as a result of the acts or omissions of Kunde Construction, the named insured. In that regard, we note that in response to a request to admit Kaiser stated that he anticipated contending at the time of trial that Pulte's liability in the underlying litigation is vicarious to or imputed from acts or omissions of Kunde Construction. Further, Kunde Construction, in its answer to Pulte's counterclaim, makes several admissions that raise the possibility that it will be found solely liable to Kaiser in the underlying litigation. For instance, Kunde Construction admits that it is in the sewer and water business, that it entered into a subcontract agreement with Pulte for a portion of the residential construction that is the subject of the Kaiser litigation, that its liability and duties, if any, arise in part from that subcontract agreement, and that its employees were working on the construction site at the alleged time and place of Kaiser's accident. Based on these admissions it is possible, perhaps even likely, that Kunde Construction will be found solely liable to Kaiser in the underlying litigation, and that if Pulte is found to be vicariously liable, that liability will result solely from Kunde Construction's acts or omissions.

Turning to the contract between Pulte and Kunde Construction and the insurance policy issued to Kunde Construction, we note that in construing contracts and insurance policies, "[t]he

cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language." Virginia Surety Co., v. Northern Insurance Co. of New York, 224 Ill. 2d 550, 556 (2007). "An insurance policy is not intended to be interpreted in a factual vacuum and without regard to the purpose for which the insurance policy was written." Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc., 287 Ill. App. 3d 741, 744 (1997). Therefore, in order to construe the parties' intent in the instant case, we must look to the language of the subcontract agreement between Pulte Homes and Kunde Construction, as well as the insurance policy issued by Pekin to Kunde Construction.

Under the contract between Pulte and Kunde Construction, Kunde Construction agreed to defend and indemnify Pulte. Specifically, section 7 of the subcontractor agreement states as follows:

"Subcontractor hereby agrees to save, indemnify, and keep harmless Pulte and its agents and employees against: all liability, claims, judgments, suits or demands for damages to persons or property arising out of, resulting from, or relating to Contractor's performance of the work under this Agreement ('Claims') unless such Claims have been specifically determined by the trier of fact to be the sole negligence of Pulte. Contractor's duty to indemnify Pulte shall arise at the time written notice of a Claim is provided to Pulte regardless of whether claimant has filed suit on the Claim. Contractor's duty to indemnify Pulte shall arise even if Pulte is the only party sued by claimant and/or claimant alleges that Pulte's negligence was the sole cause of claimant's damages. Contractor's indemnification obligation shall include, but not be limited to, any Claim

made against Pulte by (1) a Contractor's employee or subcontractor who has been injured on property owned by Pulte; (2) a homeowner or association; and (3) a third party claiming patent, trademark or copyright infringement."

The agreement further provides:

"Subcontractor will defend any and all Claims or suits which may be brought or threatened against the Contractor and will pay on behalf of the Contractor any expenses incurred by reason of such Claims including, but not limited to, court costs and reasonable attorneys' fees incurred in defending or investigating such Claims."

The agreement also required Kunde Construction to add Pulte as an additional insured, which Kunde Construction did through the additional insured endorsement to the policy issued by Pekin, which states that Pulte "is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation."

Pursuant to section 7 of the subcontractor agreement, Kunde Construction agreed to defend and indemnify Pulte "unless such claims have been specifically determined by the trier of fact to be the sole negligence of Pulte." A finding as to whether Pulte was solely liable will not be made until after a trial has been held and a determination of liability has been made. As noted above, the complaint alleges that Kaiser was injured when he fell into an unguarded sewer manhole. Kunde Construction was the sewer subcontractor, and therefore Kunde Construction could be found solely liable to Kaiser for his injuries. As a result, any liability attributed to Pulte

would arise solely as a result of the acts or omissions of the named insured. Under such circumstances, Pulte would be an additional insured under the terms of the endorsement to the insurance policy.

In Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co., 337 Ill. App. 3d 356 (2003), this court held that "an insurer must defend if the insurance contract might possibly cover the alleged source of liability. The insurer may refuse to defend only if the insurance contract cannot possibly cover the liability arising from the facts alleged, and the contract cannot possibly cover that liability only when the terms of the policy clearly preclude the possibility of coverage." Emcasco, 337 Ill. App. 3d at 359-60. Further, in Wilkin, our supreme court stated that "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis omitted.) Wilkin, 144 Ill. 2d at 73. Here, it is clear from the underlying complaint, as well as the language in the subcontractor agreement, that the allegations state facts which bring the case within or potentially within the policy's coverage. Therefore, we find that the trial court did not err in finding that Pekin has a duty to defend Pulte in the underlying litigation.

We also note that the purpose of the insurance policy in question supports finding a duty to defend. As this court held in American Country Insurance Co. v. James McHugh Construction Co., 344 Ill. App. 3d 960 (2003), "In [the protypical construction site] scenario, the employee of a contractor injured in the course of his employment on a construction site sues another entity, usually the premises owner or another contractor, who is an additional insured under his

employer's liability policy. Under such a factual situation, this court has frequently found that the additional insured is covered because it is apparent that the worker's injury arose out of the named insured's operations, and 'but for' the plaintiff's presence on the site in the service of the named insured, the accident would not have happened." McHugh, 344 Ill. App. 3d at 971. In this case, although the underlying plaintiff, Kaiser, is not an employee of a contractor, he was injured in the course of his employment at the construction site, when he fell into an uncovered sewer manhole and sued the sewer subcontractor, Kunde Construction, and the general contractor, Pulte, an additional insured under Kunde Construction's policy. Under these facts, as in McHugh, we find that the additional insured is covered because it is apparent that Kaiser's injury arose out of Kunde Construction's operations.

Pekin urges this court to follow a series of prior decisions from this court including Village of Hoffman Estates v. Cincinnati Insurance Co., 283 Ill. App. 3d 1011 (1996), and the more recent decisions in Pekin Insurance Co. v. Beu, 376 Ill. App. 3d 294 (2007), and Pekin Insurance Co. v. United Parcel Service, Inc., 381 Ill. App. 3d 98 (2008), holding that pursuant to an additional insured endorsement identical or nearly identical to the endorsement in this case, an insurer does not have a duty to defend an additional insured where the underlying complaint alleges that the additional insured's liability is based on its own acts or omissions. However, because we find that this case is distinguishable from each of those cases, we will not apply those holdings in the case currently before us.

First, in Village of Hoffman Estates, Joe Marsala, a subcontractor's employee who was injured in a fall from a platform at a construction site, filed a lawsuit against the Village of

Hoffman Estates, Leopardo-Tektonic, and others for his alleged injuries. The village, the owner of the construction project, had entered into a contract with Leopardo-Tektonic, the general contractor, which provided that Leopardo-Tektonic was responsible for "supervising all the work, coordinating all the construction methods, paying for all labor and materials and hiring a superintendent." Village of Hoffman Estates, 283 Ill. App. 3d at 1012-13. Leopardo-Tektonic purchased liability insurance from Cincinnati Insurance Company (Cincinnati), and the village was added as an additional insured, pursuant to an endorsement, which provided in pertinent part: " ' The "Person Insured" provision is amended to include as an INSURED the person or organization named above but only with respect to liability incurred solely as a result of some act or omission of the NAMED INSURED. (Emphasis omitted.)' " Village of Hoffman Estates, 283 Ill. App. 3d at 1013. The village requested that Cincinnati defend it in the Marsala action, but the company refused. Village of Hoffman Estates, 283 Ill. App. 3d at 1013. The company subsequently filed a motion for summary judgment, which the trial court granted. Village of Hoffman Estates, 283 Ill. App. 3d at 1014-15.

On appeal, the village argued that there was a potential for coverage because the additional insured endorsement was ambiguous and could "have more than one reasonable construction." Village of Hoffman Estates, 283 Ill. App. 3d at 1013. This court disagreed and found that the endorsement is "plain and unambiguous." Village of Hoffman Estates, 283 Ill. App. 3d at 1014. The court held that "[t]he endorsement specifically states that the Village is covered only if its liability was predicated *solely* on the acts or omissions of Leopardo-Tektonic" and that "[t]he term 'solely' implies exclusively or entirely." (Emphasis in original.) Village of

Hoffman Estates, 283 Ill. App. 3d at 1014.  The court then found that the Marsala complaint

alleged liability directly against both the village and Leopardo-Tektonic.  Each allegation in the

complaint was directed jointly and severally against " ' defendants and each of them' " and not

solely against the named insured.  Village of Hoffman Estates, 283 Ill. App. 3d at 1014.

Therefore, the court found that the explicit terms of the endorsement were not met, and the

village was not covered by Cincinnati's policy with Leopardo-Tektonic.  Village of Hoffman

Estates, 283 Ill. App. 3d at 1014.

Subsequently, in Pekin Insurance Co. v. Beu, 376 Ill. App. 3d 294 (2007), this court

relied on Village of Hoffman Estates in holding that an insurer does not have a duty to defend an

additional insured for its own negligence.  In Beu, Roger Beu entered into a contract with Castle

Builders to build a home in Woodstock, Illinois.  Pekin issued an insurance policy to Castle

Builders and Beu was added as an additional insured pursuant to an endorsement, which stated in

relevant part as follows: " '**Who is An Insured (Section II)** is amended to include as an insured

the person or organization shown in the schedule.  Such person or organization is an additional

insured only with respect to liability incurred solely as a result of some act or omission of the

named insured and not for its own independent negligence or statutory violation.' " Beu, 376 Ill.

App. 3d at 294-95.

When Walter Hall, an employee of T.S. Decorating, Inc., fell and was injured at the

construction site, he filed a negligence action against several defendants, including Beu and

Castle Builders.  Beu tendered its defense to Pekin, which denied that it had a duty to defend and

filed a declaratory judgment complaint.  Pekin moved for judgment on the pleadings, contending

that it had no duty to defend Beu in the underlying action because Hall's complaint alleged liability based on Beu's own negligence, and the policy does not provide such coverage for additional insureds. The trial court granted Pekin's motion and defendants appealed.

In affirming the trial court, the fourth division of the First District noted that the insurance policy provided that Beu was an additional insured " 'only with respect to liability incurred *solely* as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation.' " (Emphasis in original.) Beu, 376 Ill. App. 3d at 297. However, Hall's underlying complaint specifically alleged that " 'as a direct and proximate result of [the negligence] of the Defendants, *and each of them,*' Hall suffered severe and permanent injuries." (Emphasis in original.) Beu, 376 Ill. App. 3d at 297. Therefore, the court found that "[a]s in Village of Hoffman Estates, since the allegations in Hall's complaint were not based solely on the acts or omissions of the named insured, but also were predicated on the additional insured's alleged independent acts of negligence, plaintiff has no duty to defend the additional insured *** under the terms of the policy." Beu, 376 Ill. App. 3d at 297.

Pekin also relies for support on Pekin Insurance Co. v United Parcel Service, 381 Ill. App. 3d 98 (2008), wherein this court found that an insurer's duty to defend pursuant to an additional insured endorsement similar to the one at issue in this case was not triggered where the underlying complaint alleges that the "defendants and *each of them*" were liable for negligence. (Emphasis is added,) 381 Ill. App. 3d at 99. In United Parcel Service, Ron Aggen, an employee of Swan Machinery, Inc., filed a lawsuit against United Parcel Service (UPS) and Werner Company, for injuries he allegedly sustained when he fell from an unsafe and unstable ladder.

-17-

United Parcel Service, 381 Ill. App. 3d at 98-99. Count I of the complaint asserted a product liability claim against Werner, the ladder manufacturer. Count II raised a negligence action against UPS and Werner, alleging that " 'Defendants, and each of them, were engaged in the business of providing, servicing, maintaining and/or repairing' an A-frame ladder and 'Defendants and each of them had, in fact, serviced, maintained and/or repaired' the ladder." 381 Ill. App. 3d at 99. Both defendants filed third party complaints for contribution against Swan, and UPS's third-party complaint also sought indemnification. United Parcel Service, 381 Ill. App. 3d at 99-100.

UPS tendered its defense to Pekin, which had issued an insurance policy to Swan, naming UPS as an additional insured, pursuant to an endorsement, which stated: " '**Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the schedule. Such person or organization is an additional insured solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation.' " United Parcel Service, 381 Ill. App. 3d at 103. Pekin declined the tender and filed a declaratory judgment action seeking a determination that it owed no duty to defend UPS in the litigation. The parties filed cross-motions for summary judgment, and the trial court issued a written order in favor of UPS and against Pekin and finding that Pekin had an obligation under the policy to defend UPS. United Parcel Service, 381 Ill. App. 3d at 100.

In reversing, the sixth division of the First District stated "[w]e agree with the conclusion reached in both Village of Hoffman Estates and [Beu]" and found that pursuant to the language of the underlying complaint and the insurance policy, there was no potential for coverage.

United Parcel Service, 381 Ill. App. 3d at 104. As in those cases, the underlying complaint alleged negligence against " 'Defendants, and *each of them*' " for Aggen's fall from the ladder and the resulting injuries. (Emphasis added.) The court further found that "[t]here is nothing in the underlying complaint to suggest that Swan's acts or omissions were 'solely' to blame for Aggen's accident. Since negligence has been directly alleged against UPS, UPS is not covered by the additional insured provision in the Pekin policy." United Parcel Service, 381 Ill. App. 3d at 104.

Pekin argues that the additional insured endorsement in this case is substantively identical to the endorsements in Village of Hoffman Estates, Beu, and United Parcel Service, and that in each of those cases, this court held that an additional insured under the endorsement is insured only with respect to liability incurred *solely* as a result of some act or omission of the named insured and not for its own negligence. Therefore, Pekin asserts that it had no duty to defend Pulte in the Kaiser litigation because the underlying complaint does not allege liability against the additional insured based solely on the named insured's acts. While it is true, as Pekin asserts, that the endorsement in this case is identical to or nearly identical to the endorsement in Village of Hoffman Estates, Beu, and United Parcel Service, because each of those cases is distinguishable from the instant case, we decline to follow them in this case.

First, in Village of Hoffman Estates, Beu, and United Parcel Service, the court did not look beyond the underlying complaint, as permitted under Wilson, to analyze the terms of the contract between the contractor or subcontractor or any other documents or evidence that could help the court to determine whether the insurer had a duty to defend the additional insured.

-19-

Instead, the court relied primarily on language from the complaint alleging that "the defendants and *each of them"* were negligent as a basis for finding that the insurer had no duty to defend. Conversely, in the instant case, as noted above, under the contract between Kunde Construction and Pulte, Kunde Construction had a duty to defend Pulte "unless such claims have been specifically determined by the trier of fact to be the sole negligence of Pulte."  Since Pulte is an additional insured in the policy Pekin issued to Kunde, Pekin had a duty to defend Pulte until a trier of fact has made a determination regarding liability.

Further, in United Parcel Service neither the underlying complaint nor the third-party complaint alleged that the named insured, Swan, was in any way liable for the accident. Conversely, here, the named insured, Kunde Construction, the sewer contractor, was named as a defendant in the underlying litigation.  As addressed above, based on the facts at issue in this case, it is possible, if not likely, that Kunde Construction will be found solely liable for failing to ensure that no one would be injured by falling into an unguarded sewer manhole.  As a result, any liability that Pulte may incur would be based solely on the acts or omissions of the named insured.  Until that determination is made, Pulte is an additional insured under the terms of the insurance policy, and Pekin had a duty to defend it in the underlying Kaiser litigation.

In a recent opinion, Pekin Insurance Co. v. Hallmark Homes, L.L.C., 392 Ill. App. 3d 589 (2009), the second district held that an insurer had a duty to defend an additional insured, a general contractor, because it could potentially be solely liable for the named insured's acts or omissions, based on a theory of vicarious liability as the general contractor for failing to adequately supervise the construction site.  Hallmark Homes, 392 Ill. App. 3d at 595.  While we

reach the same conclusion as the <u>Hallmark Homes</u> court regarding the insurer's duty to defend, because we find that Pekin has a duty to defend Pulte pursuant to the specific terms of the subcontractor agreement as well as the facts giving rise to the underlying litigation, we need not address that holding in reaching our conclusion.

Lastly, Pulte argues that if it is not covered under the policy as an additional insured, the policy's coverage is illusory and, therefore, against public policy. As we have held that Pekin does owe Pulte a duty to defend under the policy, we need not reach this argument.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment to Pulte finding that Pekin had a duty to defend Pulte in the underlying Kaiser litigation.

Affirmed.

MURPHY, P.J., and STEELE, J., concur.